IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| AULETTI BROWN, | CASE NO. 5:20-cv-1233 |
| Plaintiff, | DISTRICT JUDGE |
| | BRIDGET MEEHAN BRENNAN |
| vs. | |
| | MAGISTRATE JUDGE |
| WARDEN DAVID GRAY, | JAMES E. GRIMES JR. |
| Defendant. | |
| | **REPORT AND** |
| | **RECOMMENDATION** |

Auletti Brown filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Brown is currently in custody at the Belmont Correctional Institution serving an aggregate sentence of imprisonment of 25 years to life imposed by the Stark County Court of Common Pleas in *State v. Brown*, Case No. 2017CR2362. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Brown's petition.

### Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting

that presumption by clear and convincing evidence. *Id*.

The Ohio Court of Appeals for the Fifth Appellate District summarized

the facts underlying Brown's conviction as follows:

> {¶2} Y.W.'s and his fiancée M.L. lived on Ingram
> Avenue, SW, Canton, Stark County, Ohio, with her
> four children, including a three-year-old son that she
> had with Y.W. M.L. is Brown's cousin.

> {¶3} On December 10, 2017, around seven o'clock in
> the evening, Y.W. and M.L. were at home with their
> children, drinking alcohol and smoking marijuana.
> Y.W. left and walked to Maggiore's Drive-thru to
> purchase alcohol. At approximately the same time,
> Brown left his home on Maryland Avenue, SW to go
> to Maggiore's Drive-thru to purchase beer and
> cigarettes. Brown testified that when he left home,
> he put his knife in his pants pocket because he
> always carried a knife with him when he left his
> house.

> {¶4} Brown and Y.W. got into a verbal and physical
> altercation outside the Maggiore's drive thru on
> Dueber and 9th Street in Canton, Ohio. Y.W. pushed
> Brown to the ground and accused Brown of slashing
> his car tires. Brown called 9-1-1, told the dispatcher
> never mind and hung up. Both left the area and
> walked to their respective homes, which were within
> blocks of each other. Surveillance cameras in the
> area captured portions of this altercation.

> {¶5} M.L. testified that Brown had been told to stay
> away from their home "because his drinking leads to
> violence." 1T. at 1871. M.L. testified when Y.W.
> returned from the drive thru he was angry. Y.W. told
> her that he had pushed Brown down and that if
> Brown was not her cousin he would have really
> punched on him. 1T.at 194. M.L. testified that she
> never heard a knock on the door that day, but heard
> Brown outside hollering and screaming, "Mother

2

fucker." 1T.at 208; 3T. at 535. M.L. testified that she saw Y.W. head for the door and she told him not to go, but Y.W. said, "I'm tired of him." M.L. testified that Brown came up the steps with his hands in his pockets. Y.W. took a swing at Brown and missed. She then saw Y.W. fall to the ground. M.L. testified that when Y.W. walked back up the steps, he was bleeding like a faucet and said, "He stabbed me Bae" and fell. 1T. at 197. Then she heard Brown say "Yeah, Nigga" and then Brown calmly walked away.

{¶6} On his way home, Brown hid the knife in the bushes by his neighbor's house. Officers responding to Brown's 9-1-1 call, saw Brown, and observed that he fit the physical description of Y.W.'s assailant. The officers tried to talk with Brown, but Brown put his head down and ran. The officers eventually cornered Brown and took him into custody. The arresting officers took photos of Brown's neck and abdomen and did not observe any physical injuries to his neck. When Brown was initially questioned by the police he claimed he did not know Y.W. but later admitted he went to the house to speak with "Yoshie" and that he stabbed Y.W. claiming it was in self-defense. 3T. at 627. He also told the detectives, "No one gets over on Auletti Brown." At trial Brown testified that he was being strangled when he stabbed Y.W.

{¶7} Dr. Renee Robinson, a forensic pathologist at the Stark County Coroner's Office, performed the autopsy on Y.W. Dr. Robinson testified that she observed defensive wounds on Y.W.'s forearms. She stated that it would have been difficult for a person to sustain the injuries unless they were in a defensive position. She testified that the puncture wound to Y.W.'s' heart was the result of a sharp force to Y.W.'s arm and chest in a single action and consistent with the knife in evidence. 3T. at 471-476. She testified that the puncture to Y.W.'s heart resulted in excessive bleeding and that he lost approximately 2 liters of blood as the result. Dr. Robinson testified that Y.W. died because of a sharp force injury to the chest.

3

> {¶8} At trial, Brown represented himself, called witnesses and testified on his own behalf. Throughout the proceedings, Brown maintained that he acted in self-defense. After the presentation of evidence, Brown requested and was granted a jury instruction on self-defense.
>
> {¶9} The jury found Brown guilty of murder and felonious assault. The court found Brown guilty of the Repeat Violent Offender Specification. The state agreed that the felonious assault conviction merged into the murder conviction and elected for sentencing on the murder charge.

*State v. Brown*, 2019-Ohio-2187, 2019 WL 2354950, at *1–2 (Ohio Ct. App. 2019).

## Procedural background

*Trial court proceedings*

In January 2018, a Stark County grand jury indicted Brown on one count of murder in violation of Ohio Revised Code § 2903.02(B) and one count of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1) "and/or" (A)(2). Doc. 41-1, at 10. Both counts carried a repeat-violent-offender specification. *Id*. at 10–11.

After pleading not guilty, *id*. at 12, Brown filed a motion to suppress in which he argued that he was questioned in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) and that his incriminating statements to police were involuntary, Doc. 41-1, at 13–17. The trial court denied the motion, finding that "Brown knowingly, voluntarily, and intelligently gave up his *Miranda* rights." *Id*. at 44. Contrary to Brown's argument, the court found that Brown

4

did not "'unequivocally and unambiguously' ask for an attorney" during his questioning. *Id*. at 45.

Following the trial court's decision denying Brown's suppression motion, Brown waived his right to counsel and the trial court granted counsel's motion to withdraw. *See id*. at 49–55. The trial court then appointed "standby counsel." *Id*. at 53.

In June 2018, a jury found Brown guilty of both charges. *Id*. at 66–67. The trial court sentenced Brown on count one to imprisonment for 15 years to life and to a consecutive term of 10 years' imprisonment on the repeat-violent offender specification. *Id*. at 64. The court determined that Brown's felonious assault conviction merged with his murder conviction. *Id*.

*Direct appeal*

Brown filed a timely notice of appeal with the Ohio court of appeals. Doc. 41-1, at 75. In his supporting brief, Brown raised two assignments of error:

> 1. The trial court erred by denying Appellant's motion to suppress.
>
>> A. Officers violated Appellant's Miranda rights by continuing to question Appellant after he invoked his right to counsel.
>>
>> B. Officers violated Appellant's Miranda rights by not re-advising him of his Miranda rights prior to resuming questioning.
>>
>> C. Appellant did not voluntarily waive his Miranda rights.
>
> 2. Appellant's convictions were against the manifest weight of the evidence.

*Id*. at 76–95. The court of appeals affirmed Brown's conviction in June 2019. *Brown*, 2019 WL 2354950.

In January 2020, Brown filed a motion for delayed appeal with the Ohio Supreme Court. Doc. 41-1, at 199–200. The Ohio Supreme Court denied Brown's motion in March 2020. *Id*. at 205. Brown filed a motion to reconsider, *id*. at 206–09, which the court denied in May 2020, *id*. at 213.

*Petition to reopen appeal*

In the meantime in August 2019, Brown filed in the court of appeals an application under Ohio Appellate Rule 26(B) to reopen his appeal based on a claim of ineffective assistance of appellate counsel.[1] *Id*. at 214–25. Brown argued that counsel was ineffective for not alleging error based on the trial court's failure to instruct the jury on the lesser-included offense of involuntary manslaughter. *Id*. at 215–24. The court of appeals denied Brown's application in September 2019, holding that "the trial court was correct in denying the

---

[1]   Rule 26(B)(1) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

request for the involuntary manslaughter instruction." *Id.* at 273–80. Brown did not appeal to the Ohio Supreme Court.

*Petition for post-conviction relief*

In October 2019, Brown filed in the trial court a petition for post-conviction relief. Doc. 41-1, at 293–97. Acting with the assistance of Attorney Russell S. Bensing, Brown alleged that a "portion of the interrogation in which he told the detectives that he was being choked was redacted from the video that was played in court." *Id.* at 297. The petition concluded with the following:

> The basic purpose of this motion is to give Mr. Brown a vehicle by which he can obtain the original video. Contemporaneously with the filing of this motion, a subpoena has been issued for the production of that video. If that video confirms Mr. Brown's claim, a supplemental brief will be submitted setting forth Mr. Brown's arguments in more detail. If the video does not confirm Mr. Brown's claim, this petition will be dismissed.

*Id.* at 297.

The State responded that Brown's petition amounted to "an effort to conduct discovery in the criminal case, to determine whether his claim has merit." *Id.* at 302. It then asserted that Brown was attempting "to embark on a fishing expedition for exculpatory evidence" and argued that "[p]etitions for post-conviction relief are only available to defendants to rectify errors in prior proceedings and to effectuate justice" but not for "fishing expeditions." *Id.* The State also recounted that Brown represented himself at trial, received

7

discovery, testified on his own behalf, and admitted that photos taken when he was arrested did not show that he suffered physical injuries. *Id.* at 303.

In December 2019, the trial court denied Brown's petition for the reasons stated by the State in its opposition. *Id.* at 305–06.

Brown filed a notice of appeal and notice of delayed appeal in late February 2020. *Id.* at 309–12. The court of appeals construed the notice of delayed appeal as a motion for a delayed appeal and, so construed, denied it because a delayed appeal is not available in a post-conviction relief appeal. *Id.* at 315. It thus dismissed Brown's appeal. *Id.* at 316. Brown did not appeal this denial to the Ohio Supreme Court.

*Brown's 2020 trial court motions*

In June 2020, citing Rule 33(A)(6) of the Ohio Rules of Criminal Procedure and Ohio Revised Code § 2945.79(F), Brown filed a motion for a new trial.[2] Doc. 41-1, at 317–25. Among other matters, Brown alleged that video of his confession that was played for the jury did not match the transcript of his statement and that a forensic analysis showed that the video of his questioning was incomplete and thus "not a true and accurate … reproduction of the interview." *Id.* at 319–20. He also alleged that his "interrogation" continued "after the ending of the video." *Id.* at 322. Among other things, Brown

---

[2]     Ohio Criminal Rule 33(F) provides a basis to file a motion for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Section 2945.79(F) provides a similar basis for a new trial.

supported his motion with a forensic report authored by Herbert Joe, *id.* at 349–57, which detailed that there was no discontinuity in the audio or visual aspects of the video but that the video ended before the end of the interview, *id*. at 354. The report thus concluded that the video was not complete. *Id.*

In June 2020, Brown also filed a "motion to comply," in which he asked the trial court to order its clerk to provide Brown with a copy of a subpoena that Attorney Bensing allegedly issued to the Canton police department when Bensing filed Brown's petition for post-conviction relief. *Id*. at 358.

In mid-October 2020, Brown submitted a filing styled as "(Addendum) Motion pursuant [to] Criminal Rule 33 and O.R.C. 2945.79 Appellant Auletti Brown." *Id*. at 380–90. In this filing, Brown asserted that forensic analysis had shown that the video played during his trial differed from the one played during his suppression hearing. *Id*. at 361.

The State filed an opposition to Brown's motion for a new trial, arguing that Brown had not presented new evidence. *Id*. at 371–73. As it relates to Brown's amended petition, it also argued that the forensic report showed that the video was not altered, which is not an exculpatory fact. *Id*. at 373. According to the State, the forensic analysis stated the "obvious" fact that the visual portion of the video stopped before the end of the interview but ignored the fact, evident from the transcript, that the audio portion of the video continued until the end. *Id*. at 374–75. It noted that the jurors "had both the audio and video files available to them." *Id*. at 375. And, the State added,

"because the defendant had the audio recording, the video recording, and transcript, he could have certainly inquired about the discrepancy at the end of the video during his cross examination of the officers." *Id.*

Later in October 2020, Brown submitted another filing styled as "(Addendum) Motion pursuant [to] Criminal Rule 33 and O.R.C. 2945.79 Appellant Auletti Brown." *Id.* at 380–90. This filing contained the same claims as in Brown's previous addendum. *Id.* at 381.

In November 2020, Brown filed a motion to dismiss his then-pending motion for a new trial, together with a motion for leave to file a delayed motion for new trial. *Id.* at 396–403.

In November 2020, the trial court determined that Brown's motion to dismiss constituted a motion to withdraw his June motion for a new trial and his addendums. *Id.* at 405. And the motion to dismiss rendered moot a motion to strike that Brown had filed. *Id.*; *see id.* at 391–95.

In December 2020, Brown filed a motion for leave to file a delayed motion for a new trial, together with a motion for a new trial. *See* Doc. 41-1, at 407–31. In his motion for leave, Brown said that he was "raising a claim based on newly discovered evidence of Prosecutor Misconduct resulting in a Fraud upon this Court of Common Pleas." *Id.* at 408. In his motion for a new trial, Brown asserted that detectives continued to question him after he invoked his right to counsel, referenced the forensic report which showed that the video of Brown's questioning was incomplete, asserted that the transcript of his

questioning did not match the video of it, and questioned whether "how much additional interrogation was not recorded at all." *Id*. at 419–26. Brown also argued that a statutory amendment, enacted after Brown's trial, which affected the State's burden of proof, meant that the State failed to carry its burden in Brown's case.[3] *Id*. at 426–27. In support of this motion, Brown submitted the previously filed forensic report from Herbert Joe, *id*. at 432–41, Brown's type-written notes of his trial and interrogation transcript, *id*. at 442–43, portions of his trial transcript, *id*. at 444–47, a draft transcript from Joe, *id*. at 448, an affidavit from Jennifer Walker concerning statements made during Brown's trial, *id*. at 450, and annotated portions of Brown's trial transcript, *id*. at 451–54.

After the State filed a response, *id*. at 455–65, Brown moved to strike it as untimely, *id*. at 471–74. He also filed a request that the trial court take judicial notice of recent Ohio statutory amendments related to the duty to retreat when in one's own home. *Id*. at 466–68.

In September 2021, Brown submitted in the trial court a filing styled as "filing of supplemental evidence via modified report." *Id*. at 484–87. Attached

---

[3] At the time of Brown's trial, defendants had the burden by a preponderance of the evidence to prove self-defense. *See State v. Brooks*, 208 N.E.3d 751, 757 (Ohio 2022). Effective in March 2019, the Ohio legislature amended Ohio Revised Code § 2901.05 to provide that when self-defense is raised in a trial, the prosecution "must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." *Id*. at 755–56; *see* Am. Sub. H.B. No. 228.

to this filing was an affidavit from Joe in which he attested that the video of Brown's questioning was incomplete, that Brown was asked by detectives whether he "want[ed] [his] lawyer *now*," and that during the interview, Brown said the names Yoshawn, Taishawn, and Yoshi, six times. *Id.* at 492–96 (emphasis added). Brown also attached a portion of letter from Attorney Bensing to the Cleveland Metropolitan Bar Association in which Bensing admitted that due his wife's passing, he had "neglected" Brown's case. *Id.* at 499. Bensing also discussed Brown's prosecutorial misconduct claim and the fact that Joe's report "found no evidence of editing." *Id.*

The trial court ruled on many of Brown's motions in September 2021. *Id.* at 500–02. The trial court noted that under Ohio Criminal Rule 33(B), Brown had to file a motion for new trial within 120 days after his verdict was rendered unless he could show "by clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence upon which he must rely." *Id.* at 501 (quoting Ohio Crim. R. 33(B)). The court explained:

> Upon review, the Court finds that the basis of the defendant's motion relates to his continuing argument that there were "multiple" versions of the video statement that he made to detectives regarding the death of Yoshawn Williams. This argument was asserted by the defendant at pre-trial hearings, as well as to the jury at the trial in this matter. The video of this statement, along with the audio and transcription version of same, were made available to the defendant prior to trial and the defendant was present during the suppression hearing and trial when the video was played. As such, the defendant had the opportunity to compare the statements and have them analyzed within the

12

timeframe set forth in Crim.R. 33. While the defendant now attempts to assert that the forensic analysis that was done on the video and submitted in conjunction with his motion is "newly discovered" evidence, the Court finds that the analysis could have been done prior to trial and within the timeframe set forth in Crim.R. 33.

For the reasons set forth herein, as well as those set forth in the State's response, the defendant's Motions for Leave to File a Delayed Motion for New Trial, filed November 9, 2020, and December 8, 2020, are, hereby, OVERRULED. Additionally, the defendant's "Motion to Strike State's Untimely Response Brief" is OVERRULED.

*Id*. at 502.[4]

In a separate order, the trial court denied Brown's motion to comply in which he sought a copy of a subpoena that Bensing allegedly submitted to the Canton Police Department." *Id*. at 503. The court noted that Bensing had not filed the referenced subpoena but had instead filed a public records request, "which would not be part of the docket in this matter." *Id*. As a result, the court denied Brown's motion. *Id*.

Brown filed a notice of appeal from the denial of his motion for leave to file a delayed motion for a new trial. Doc. 41-1, at 504. The court of appeals affirmed in March 2022. *Id*. at 604–14. The court of appeals noted that because Brown's "'motion was filed well outside the 120-day period, he was required to obtain leave of court to file his motion for new trial.'" *Id*. at 611 (quoting *State*

---

[4]     In a footnote responding to a "Judicial Notice" which Brown had filed, *see* Doc. 41-1, at 466–68, the trial court stated that the statutory amendment related to self-defense did not apply retroactively, *id*. at 500 n.2.

*v. Waddy*, 68 N.E.3d 381, 388 (Ohio Ct. App. 2016)); *see* Ohio Crim. R. 33(B). And to obtain leave, Brown had to "demonstrate by clear and convincing proof that he … was unavoidably prevented from discerning the evidence within the 120 days." *Id*. Under Ohio precedent, a defendant "is 'unavoidably prevented' from filing a motion for a new trial if [the defendant] had no knowledge of the ground supporting the motion and could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence.'" *Id*. (quoting *Waddy*, 68 N.E.3d at 388). The court of appeals recited that "'[c]lear and convincing proof that the defendant was unavoidably prevented from filing requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.'" *Id*. (citation omitted). This requirement "puts the burden on the defendant to prove that he was unavoidably prevented from discovering the evidence in a timely manner." *Id*.

According to the court of appeals, "[t]he 'unavoidably prevented' requirement in Crim.R. 33 mirrors the 'unavoidably prevented' requirement in" Ohio Revised Code § 2953.23. *Id*. at 612. And "[t]he phrase 'unavoidably prevented' means that a defendant was both unaware of the facts and was unable to learn of them through reasonable diligence." *Id*.

The court of appeals held that Brown "failed to support his motion with any affidavits of documentary evidence" and "did not discover any 'new evidence.'" *Id*. at 612. It explained that:

> The recordings and transcripts of the recordings existed at the time of the trial. Appellant even asserted these claims during his trial. The trial court stated that the video, audio, and transcription of [Brown's] interview were made available to [Brown] prior to his June 18, 2018, trial and … [Brown] had heard and seen the video as early as April 19, 2018, at the suppression hearing.

*Id.* The court concluded, as a result, that Brown "was not unavoidably prevented from discovering whatever evidence he is claiming supports his arguments as it relates to the analysis of the video." *Id.* at 613. It thus "overruled" Brown's assignment of error. *Id.*

In June 2022, Brown filed in the Ohio Supreme Court a "motion for delayed appeal," Doc. 41-1, at 621–25, a notice of filing a delayed appeal, *id.* at 646–47, and a motion for court to take judicial notice, *id.* at 648–50. The Ohio Supreme Court granted Brown's motion to file a delayed appeal in early August 2022. *Id.* at 651.

In his memorandum in support of jurisdiction, Brown raised four propositions of law:

> 1.When prosecutor misconduct/a *Brady* violation has been proven after a jury verdict of guilt, can the conviction be allowed to stand?

> 2. When a Courts *Miranda/Edwards* decision denying a motion to suppress an accused persons statement is based on evidence that was the result of prosecutor misconduct through a *Brady* violation, is this a reversible fair trial violation?

> 3. When an Appellant has filed a motion for a new trial based on evidence of prosecutor misconduct related to a *Brady* violation. is it an abuse of

15

> discretion for a trial court to deny the motion for
> leave to file a motion for a new trial to avoid
> addressing the trial courts making the
> *Miranda*/*Edwards* question based on evidence that
> has been proven to have signs of tampering or
> editing, is not a true and complete copy of the
> statement in question.
>
> 4. Violation of due process lack of adequate review;
> is appellate court's decision contrary to this court's
> recent decisions made in *State v. Bethel*, 2022-Ohio-
> 783.[5]

*Id.* at 653. On October 25, 2022, the Ohio Supreme Court declined under Rule

7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 701. It also denied

Brown's motion to take judicial notice. *Id.*

*Brown's 2022 trial court filings*

In February 2022, Brown filed in the trial court a motion under Rule

60(B)(5) of Ohio's rules of civil procedure "to vacate" the trial court's "judgment

in this matter." Doc. 41-1, at 702. The trial court quickly denied the motion

because civil rule 60 does not apply in criminal proceedings. *Id.* at 724. In June

2022, the Ohio court of appeals dismissed as untimely Brown's subsequent

appeal. *Id.* at 769; *see id.* at 725. And in August 2022, the court of appeals

denied a motion Brown filed for leave to file a delayed appeal. *Id.* at 829; *see*

*id.* at 784–89.

---

[5]     Unless otherwise indicated, Brown's propositions of law and issues
presented in this report and recommendation are reproduced as written.

In August 2022, Brown filed a notice of appeal with the Ohio Supreme Court. *Id*. at 831–32. In his memorandum in support of jurisdiction, Brown raised two propositions of law:

> 1. Did the appellate court abuse their discretion in refusing to file Appellant's initial notice of appeal?
>
> 2. Did the appellate court abuse their discretion in refusing to grant Appellant's Motion to File Delayed Appeal in light of his making a significant showing of institutional interference and delay in the delivery of his initial Notice of Appeal?

*Id*. at 847. On October 25, 2022, the Ohio Supreme Court declined under Rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id*. at 861.

Meanwhile, in September 2022, Brown filed in the court of appeals a motion styled as "Rule 60(B)(5) motion for relief from judgment." *Id*. at 862–78. This motion was directed to the court of appeals' August 2022 decision denying Brown's motion for leave to file a delayed appeal. *See id*. at 862; *see also id*. at 926.

The court of appeals denied this motion in November 2022. *Id*. at 926–27. In doing so, the court noted that Rule 60 does not apply in appeals. *Id*. at 926. It thus treated Brown's motion as a motion to reconsider. *Id*. at 926. Under Ohio Appellate Rule 26(A), however, a motion to reconsider must be filed within 10 days of the order at issue. *Id*. Because Brown filed his motion outside the ten-day window, it was untimely. *Id*. Additionally, the motion simply repeated Brown's previous arguments. *Id*.

Brown filed a notice of appeal with the Ohio Supreme Court in December 2022. *Id.* at 928. In a memorandum in support of jurisdiction, Brown raised two propositions of law:

> 1. Did the appellate court err in finding that Ohio Civ. R. 60(b) is inapplicable to appeal?
>
> 2. Did the appellate court abuse the court's discretion in failing to review the affidavits submitted as evidence in defendant's motion for leave to file a delayed appeal?

*Id.* at 931. On February 28, 2023, the Ohio Supreme Court declined under Rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 949.

*Federal habeas proceedings*

Brown filed a petition for writ of habeas corpus on May 26, 2020. Doc. 1, at 15; *see Houston v. Lack*, 487 U.S. 266, 270 (1988) (holding that an imprisoned petitioner's petition is deemed filed when he places it in his prison's mailing system). He raised four grounds for relief:

> GROUND ONE: Trial court erred by denying appellant's motion to suppress statements made when and after his *Miranda* rights were violated, i.e. continued questioning after invoking right to counsel, did not re-advise *Miranda* rights prior to resuming questioning and that appellant did not voluntarily waive his *Miranda* rights.
>
> GROUND TWO: Appellant's convictions were against the manifest weight of the evidence.
>
> GROUND THREE: Custodial interrogation of the accused must cease when the accuse requests counsel, and where there has been such a request, police officials may not re-initiate interrogation without counsel present. Fifth & Fourteenth

18

> Amendment to U.S. Constitution, Miranda v. Arizona (1966).

> GROUND FOUR: Appellant denied due process and fair trial when prosecution played an altered interrogation video without the deleted sections specifically Appellant's explaining in acted-out detail that he acted in self-defense. Taped interview transcripts failed to match the edited video.

Doc. 1, at 5–10.[6]

Brown soon filed a "motion for stay and abeyance," so that he could exhaust his remedies in Ohio's courts. *See* Doc. 7, at 1. Respondent Warden did not oppose Brown's motion, *see* Doc. 13, at 1, and the Court granted it in November 2020.

In March 2023, Brown moved to file an amended habeas petition. Doc. 31. After the Court granted Brown's motion, he filed an amended petition. *See* Doc. 37. In it he raises five grounds for relief:

> GROUND ONE: Violation of Fifth, Sixth and Fourteenth Amendments, Trial Court erred by denying appellants Motion to Suppress Statements made when and after Mr. Brown's Miranda Rights were violated. When addressing this issue, this court should be aware from the beginning the conversation around the Miranda issue was being quoted inaccurately and the transcript of the interrogation from the motion of discovery were not accurate, which led Mr. Brown to hire a Forensic Expert to analyze the video (refer to report).

> GROUND TWO: Mr. Browns convictions were against the manifest weight of the evidence these convictions are not supported by sufficient evidence that Mr. Brown acted outside of the elements of self-

---

[6]     Given their length, I have not reproduced Brown's supporting facts.

defense, showing he acted in a lawful self-defense which is a fundamental constitutional right under both the Ohio Constitution and the United States Constitution. The appellate courts findings are not subject to deference under the AEDPA because their review of the evidence resulted in an unreasonable determination of the facts related to Mr. Browns claim that he acted in self-defense. Each of the common law elements required to be proven to support a claim of acting in self-defense. Each of the common law elements required to be proven to support a claim of acting in self-defense were proven by the states own evidence and witness.

GROUND THREE: Custodial interrogation of an accused person must cease when the accused person requests counsel, and where there has been such a request, police officials may not reinitiate the interrogation without counsel present. Fifth, Sixth & 14th Amendment's to the U.S. Constitution violated pursuant Miranda v. Ariz., 384 U.S. 436, Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), Minnick v. Mississippi, 498 U.S. 146, 147, 111 S. Ct. 486, 112 L. Ed. 2d 489 (1990).

GROUND FOUR: Mr. Brown was denied his rights to due process and fair trial proceedings when prosecution played an altered interrogation video without the deleted sections specifically portions of Mr. Brown explaining and acting out the details of how he was forced to act in self-defense. The video-taped interview/interrogation failed to match the edited video. This edited video most importantly had a direct effect on the trial court judge's decision regarding the issue of the suppression of this video and the statements made in the video.

GROUND FIVE: Petitioner Mr. Brown is entitled to the retroactive application of the repeal and reenactment of Ohio Revised Code 2901.05 and the Burden of Proof Beyond a Reasonable Doubt being placed on the State of Ohio and proof by a preponderance of the evidence being removed from

20

> the defense, Pursuant the constitutional commands contained within, Griffith v. KY, 479 U.S. 314, 316, 107 S. Ct. 708, 709, 93 L. Ed. 2d 649, 654, 1987 U.S. LEXIS 283,, 55 U.S.L.W. 4089 (U.S. January 13, 1987), Teague v. Lame, 489 U.S. 288, Montgomery v. Louisiana, 577 U.S. 190, 197-198, 136 S. Ct. 718, 727-728, 193 L. Ed. 2d 599, 612, 2016 U.S. LEXIS 862, *12, 84 U.S.L.W. 4063, 25 Fla. L. Weekly Fed. S 611 (U.S. January 25, 2016). Mr. Brown is entitled to retrial through the retroactive application of this new rule of criminal procedure.

Doc. 37, at 8, 13, 17, 20, 27. The Warden filed a return, Doc. 41, and Brown filed a traverse.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 (AEDPA or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when "state court remedies are no longer available to a petitioner because

he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Robinson v. Horton*, 950 F.3d 337, 343 (6th Cir. 2020). To exhaust his remedies, a state defendant with federal constitutional claims must "fairly presen[t]" those claims to the state courts before raising them in a federal habeas corpus action. *Robinson*, 950 F.3d at 343 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003). And a habeas petitioner must "present[] both the factual and legal basis for [the] claims to the state courts." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012). This means that the "'petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law.'" *Williams*, 460 F.3d at 806 (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015)

23

("When a petitioner has failed to fairly present … claims to the state courts and no state remedy remains, [the] claims are considered to be procedurally defaulted.") (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)). While the exhaustion requirement is technically satisfied in this circumstance because state remedies are no longer available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show "cause for the default and actual prejudice as a result of the alleged violation of federal law," or show that a "fundamental miscarriage of justice" will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that the state court's adjudication "was contrary to," or "involved an unreasonable application of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1); *see Fields*, 86 F.4th at 232.

24

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law'" refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting 28 U.S.C. § 2254(d)(1) and *Woodall*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *see Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme

Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## Discussion

### *1. Brown's first and third grounds for relief are procedurally defaulted*

In his first ground for relief, Brown alleges that the trial court erred, in violation of his rights under the Fifth, Sixth and Fourteenth Amendments, when it denied his motion to suppress statements that Brown argues were made in violation of his rights under *Miranda v. Arizona*. Doc. 37, at 8. In his third ground, Brown similarly alleges that police officials violated of his rights under the Fifth, Sixth and Fourteenth Amendments when, after he invoked his right to counsel, they questioned him without counsel being present. Doc. 37, at 17.

"'A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules.'" *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (quoting *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000)). The denial by the Ohio Supreme Court of a "motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of [a petitioner's] habeas corpus petition." *Id*.

Brown raised the basis for the issues presented in his first and third grounds in his appeal to the Ohio court of appeals. *See* Doc. 41-1, at 89–93. Following that court's rejection of Brown's arguments, however, Brown failed to file a timely appeal with the Ohio Supreme Court. Instead, Brown filed a motion for delayed appeal with the Ohio Supreme Court. Doc. 41-1, at 199–

200. And that court denied Brown's motion, *id*. at 205, and his motion to reconsider, *id.* at 213.

In light of *Bonilla*, Brown has procedurally defaulted his first and third grounds for relief and review of those grounds "is barred unless [he] can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Bonilla*, 370 F.3d at 497. To show cause, Brown must show that "'some objective factor external to the defense' prevented [his] compliance with a state procedural rule." *Id*. at 498.

As an initial matter, Brown argues that *Bonilla* does not apply because the Ohio Supreme Court granted his motion to file a delayed appeal. Doc. 44, at 3. Brown is mistaken.

Although the Ohio Supreme Court did grant a motion Brown filed to file a delayed appeal, Doc. 41-1, at 651, that motion was filed in the context of Brown's appeal of the denial of his motion for a new trial, *id*. at 621–25. In the context of Brown's direct appeal and the review of the issues presented in Brown's first and third grounds for relief, the Ohio Supreme Court denied his motion. *Id*. at 205. So *Bonilla* applies.

Next, Brown says that he can point to an objective factor external to him that prevented him from complying with a state procedural rule. Doc. 44, at 4. Brown claims that "it was interference in the institutional mail room and confusion within the Clerk of Court's Office that resulted in the notices' of

28

appeal being filed untimely." *Id.* But to support this assertion, Brown points to his motion to file a delayed appeal and supporting affidavit submitted in the context of the review of the denial of motion for a new trial. *Id.* (citing Doc. 41-1, at 621–28).[7] And that motion and supporting affidavit discussed events in 2022, *see* Doc. 41-1, at 621–28, after the events in the period between June 2019, when the court of appeals decided Brown's direct appeal, and January 2020, when Brown filed a motion to file a delayed appeal in his direct appeal. So Brown has not shown cause as to the procedural default of his first and third grounds for relief.

Because Brown has failed to show cause, there is no need to consider prejudice. *See Bonilla*, 370 F.3d at 497.

Brown could also attempt to avoid his default by showing that a "'fundamental miscarriage of justice'" would result "if the court declines to consider" his first and third grounds. *Carr v. Warden, Lebanon Corr. Inst.*, 401 F. App'x 34, 37 (6th Cir. 2010). But he doesn't claim that such a result would occur or offer a claim of actual innocence sufficient to a establish a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Brown has procedurally defaulted his first and third grounds for relief.

---

[7]      Brown cites ECF PageID 1027–34. *See* Doc. 44, at 4. ECF pages 1027 to 1034 are found at pages 621 to 628 of the state court record. *See* Doc. 41-1.

*2. Brown's second ground is non-cognizable in part and procedurally defaulted in part.*

In his second ground for relief, Brown argues that his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence that he did not act in self-defense. Doc. 37, at 13. He also argues that the Ohio court of appeals "findings are not subject to deference under the AEDPA because their review of the evidence resulted in an unreasonable determination of the facts related to [his] claim that he acted in self-defense." *Id.*

In his appeal to the Ohio court of appeals, Brown argued that his convictions were against the manifest weight of the evidence. Doc. 41-1, at 93–95. To the extent that Brown seeks to raise a manifest-weight claim now, and assuming the issue is not subject to procedural default, manifest-weight claims are not cognizable in a habeas petition filed under 28 U.S.C. § 2254. *See Nash v. Eberlin*, 437 F.3d 519, 522 (6th Cir. 2006) (holding that a "manifest-weight-of-the-evidence claim did not raise an issue of federal law"). So the Court cannot review this aspect of Brown's second ground.

Courts, however, typically construe a pro se petition raising a manifest-weight issue as asserting a sufficiency-of-the-evidence claim. *See id.*; *see also Hoffman v. Lazaroff*, No. 18-3439, 2018 WL 5849894, at *3 (6th Cir. Sept. 17, 2018) (order); *Thompson v. Harris*, No. 18-cv-2103, 2020 WL 5810020, at *8–9 (N.D. Ohio Sept. 30, 2020) (citing cases). And habeas courts will also typically find that a "state court's decision on the manifest weight of the evidence" as

30

having "subsumed a decision on the sufficiency of the evidence." *Nash v. Eberlin*, 258 F. App'x 761, 765 n.4 (6th Cir. 2007). So the portion of Brown's second ground that alleges a sufficiency-of-the-evidence claim is potentially cognizable. *Cf. Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009). (explaining how sufficiency-of-the-evidence claims are reviewed in habeas proceedings).

The problem, however, is that as with Brown's first and third grounds, Brown failed to perfect an appeal from the court of appeals' decision rejecting his manifest-weight argument. And just as with Brown's first and third grounds, the denial by the Ohio Supreme Court of a "motion for leave to file a delayed appeal constitutes a procedural ruling sufficient to bar federal court review of" Brown's sufficiency challenge. *Bonilla*, 370 F.3d at 497. Further, just as with Brown's first and third grounds, Brown cannot avoid this result because he has not shown cause sufficient to avoid his default and has not asserted that a fundamental miscarriage of justice would result if the court declines to consider his second ground for relief.

The Court should reject Brown's second ground for relief.

### 3. Brown's fourth ground is procedurally defaulted

In his fourth ground for relief, Brown alleges that State "denied his rights to due process and fair trial proceedings when [the] prosecution played" before the jury "an altered interrogation video without" allegedly "deleted sections," which contained his "expla[nation] and acting out the details of how

31

he was forced to act in self-defense." Doc. 37, at 20. He also alleges discrepancies between "[t]he video-taped interview/interrogation" and "the edited video." *Id.*

Brown raised this issue in a motion for a new trial filed under Ohio Criminal Rule 33 and Ohio Revised Code § 2945.79. *See* Doc. 41-1, at 412–31; *see also id.* at 484–99 ("filing of supplemental evidence via modified report").[8] Brown filed this motion in conjunction with a threshold motion for leave to file a delayed motion for a new trial. *See id.* at 407–11. The trial court did not rule on Brown's motion for a new trial because it denied Brown's motion for leave to file delayed motion for a new trial. And the trial court denied Brown's motion for leave because it was filed more than 120 days after the verdict was issued and because Brown had not shown "by clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence upon which he must rely." *Id.* at 501–02 (quoting Ohio Crim. R. 33(B)). In particular, the trial court noted, the video of Brown's questioning, "along with the audio and

---

[8]     Ohio Revised Code § 2945.79(F) permits the filing of a motion for a new trial "[w]hen new evidence is discovered material to the defendant, which he could not with reasonable diligence have discovered and produced at the trial." Rule 33(A)(6) allows a defendant to file a motion for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Ohio Crim. R. 33(A)(6). A motion for new trial based on "newly discovered evidence [must] be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." Ohio Crim. R. 33(B). A defendant may be excused from the 120-day time limit on showing "by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely." *Id.*

transcription of same[] were made available to [Brown] [before] trial and [he] was present during the suppression hearing and trial when the video was played." *Id.* at 501–02. And although Brown offered a forensic analysis of the video, the analysis could have been done before "trial and within the [120-day] timeframe … in Crim.R. 33." *Id.* at 502.

The court of appeals affirmed, noting that because Brown's motion for a new trial was untimely—it was filed outside the 120-period for filing a motion under Criminal Rule 33—"he was required to obtain leave of court to file his motion."[9] *Id.* at 611 (quoting *State v. Waddy*, 68 N.E.3d 381, 388 (Ohio Ct. App. 2016)); *see* Ohio Crim. R. 33(B). But to do that, Brown had to "demonstrate by clear and convincing proof that he … was unavoidably prevented from discerning the evidence within the 120 days." Doc. 41-1, at 611. According to the court of appeals, "[a] party is 'unavoidably prevented' from filing a motion for a new trial if they had no knowledge of the ground supporting the motion and could not have learned of the existence of that ground within the time prescribed for filing the motion in the exercise of reasonable diligence." *Id.*

The court of appeals stated that "[t]he phrase 'unavoidably prevented' means that a defendant was both unaware of the facts and was unable to learn

---

[9]      The Ohio Supreme Court declined to review Brown's appeal of the denial of his motion for a new trial. So the court of appeals' decision provides the basis for this Court's review. *See Guilmette v. Howes*, 624 F.3d 286, 291–92 (6th Cir. 2010).

of them through reasonable diligence."[10] *Id*. at 612. The court explained that "the central inquiry" in adjudicating Brown's motion was "whether he was unaware of the facts disclosed by the evidence and whether he was unavoidably prevented from obtaining that information through reasonable diligence." *Id*.

Noting that Brown claimed that a forensic analysis showed that the video of his questioning by police "was 'not in fact true, complete[,] and correct," and that Brown seemed "to claim that multiple versions of the recordings and transcripts exist[ed]," the court found that Brown failed to provide "any affidavits o[r] documentary evidence" to support his burden. *Id*. Additionally, Brown "did not discover any 'new evidence'" because the "recordings and transcripts of the recordings existed at the time of the trial." *Id*. In this regard, the court of appeals noted that the trial court had explained that "the video, audio, and transcription of [Brown's] interview were made available to [Brown] prior to his June 18, 2018, trial and … [Brown] had heard and seen the video as early as April 19, 2018, at the suppression hearing." *Id*. Based on this discussion, the court concluded that Brown "was not unavoidably prevented from discovering whatever evidence he is claiming supports his arguments as it relates to the analysis of the video." *Id*. at 613.

Although Brown seeks to challenge this determination, he faces an initial hurdle in that it is apparent that the claim is subject to procedural

---

[10]     The court of appeals explained that "[t]he 'unavoidably prevented' requirement in Crim.R. 33 mirrors the 'unavoidably prevented' requirement in" Ohio Revised Code § 2953.23. Doc. 41-1. at 612.

default under *Maupin*. First, in Criminal Rule 33, Ohio has a rule governing the filing of a motion for a new trial. *See Maupin*, 785 F.2d at 138 ("First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."). And motions under that rule are subject to a 120-day time limit unless the movant can show by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence during the 120-day window.

Second, there is no dispute that Brown's motion was filed outside the 120-day window and that Ohio's courts enforced the rule and found that Brown failed to provide clear and convincing proof that he was unavoidably prevented from timely discovering his evidence.[11] *See Maupin*, 785 F.2d at 138 ("Second, the court must decide whether the state courts actually enforced the state procedural sanction."). What's more, Brown doesn't challenge the determination that—because he was given access to the video and the transcripts before trial and was present during his suppression hearing and trial—he could have discovered his evidence sooner. Instead he merely says

---

[11] Brown mistakenly claims that the court appeals applied a since-rejected rule that a motion for a new trial must be filed within a reasonable time. Doc. 44, at 20–24; *see State v. Bethel*, 192 N.E.3d 470, 483 (Ohio), *reconsideration denied*, 187 N.E.3d 564 (Ohio 2022), *cert. denied*, 143 S. Ct. 789 (2023). But the court of appeals did not deny Brown's motion as untimely for failing to comply with the judicially created reasonableness requirement. Instead, it found that Brown failed to comply with the statutory 120-day time limit and then failed to show that he fell within the terms of the statutory exception to the time limit.

that he couldn't obtain Joe's forensic analysis until he "convince[d] a family friend to pay" for the analysis. Doc. 44, at 22. But that assertion misses the point of the court of appeals' determination.

Third, Criminal Rule 33(B) is an adequate and independent state ground on which the State can foreclose review of Brown's constitutional claim. *See Maupin*, 785 F.2d at 138. In this regard, to constitute an adequate and independent state bar, a state procedural rule must be "firmly established and regularly followed." *Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008). The rule the court of appeals applied is both firmly established, *see State v. Schiebel*, 564 N.E.2d 54, 74–76 (Ohio 1990), and regularly followed, *see Nunez v. Bowerman*, No. 19-3582, 2019 WL 8165938, at *3 (6th Cir. Nov. 7, 2019) (order) (citing cases).[12] It is thus an adequate and independent ground on which to foreclose review. *See Stojetz v. Ishee*, 892 F.3d 175, 205 (6th Cir. 2018); *see also Davis v. Bradshaw*, 2016 WL 8257676, at *39–40 (N.D. Ohio June 16, 2016) (collecting cases), *report and recommendation adopted*, 2017 WL 626138

---

[12]    As referenced above in note 11, some Ohio courts in the past imposed an extra-statutory reasonableness time limit on a motion for leave to file a motion for a new trial. *See McNeill v. Bagley*, 10 F.4th 588, 597 (6th Cir. 2021). The Sixth Circuit strongly suggested that a reasonableness time limit for filing a motion for a new trial based on newly discovered evidence is not a "firmly and clearly established rule." *Id*. As noted above, the Ohio Supreme Court has since held that Criminal Rule 33(B) does not impose a reasonableness time limit. *Bethel*, 192 N.E.3d at 483. The court of appeals in Brown's case, however, did not deny Brown's motion as untimely for failing to comply with the judicially created reasonableness requirement. Instead, it found that Brown failed to comply with the statutory 120-day time limit and then failed to show that he fell within the terms of the statutory exception to the time limit.

(N.D. Ohio Feb. 15, 2017); *cf. Matthews v. Ishee*, 486 F.3d 883, 889–90 (6th Cir. 2007) (assuming without deciding that an untimely-filed motion under Ohio Criminal Rule 33 would constitute a procedural default unless the petitioner could show cause for the untimeliness and prejudice from failure to reach the constitutional claim).

Finally, Brown hasn't shown cause and prejudice. *Maupin*, 785 F.2d at 138. As for cause, Brown seemingly asserts that his trial counsel during the suppression hearing—Brown waived his right to counsel *after* the suppression hearing—his appellate counsel, and his post-conviction counsel were all ineffective. *See* Doc. 44, at 16–18. But a petitioner must exhaust his ineffective-assistance-of-counsel claim in state court before relying on it to show cause in his habeas case. *Williams v. Lazaroff*, 648 F. App'x 548, 553 (6th Cir. 2016). And while Brown did raise ineffective assistance of appellate counsel in an application to reopen his appeal, *see* Doc. 41-1, at 215–24, that application was based on a different claim of ineffectiveness. And, in any event, Brown did not appeal to the Ohio Supreme Court the denial of his application to reopen his appeal. So Brown can't show cause.

Given that Brown hasn't shown cause, there is no need to consider prejudice. *See Bonilla*, 370 F.3d at 497. And as is the case with Brown's previous grounds, Brown has not shown that a "'fundamental miscarriage of justice'" would result "if the court declines to consider" his fourth ground. So Brown's fourth ground is procedurally defaulted.

### 4. Brown's fifth ground is defaulted and not cognizable

As previously noted, at the time of Brown's trial, Ohio defendants had the burden to prove self-defense by a preponderance of the evidence. *See* Ohio Revised Code § 2901.05 (2017); *Brooks*, 208 N.E.3d at 757. Effective in March 2019, however, Ohio amened section 2901.05 and placed the burden on the State to "prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." *See* Am. Sub. H.B. No. 228 (effective Mar. 28, 2019). In his fifth ground for relief, Brown argues that he is entitled to retroactive application of the amended version of Section 2901.05. Doc. 37, at 27.

Brown raised this issue in his motion for new trial, Doc. 41-1, at 426–27, which he filed in conjunction with a motion for leave to file delayed motion for new trial, *see id*. at 407–11. The trial court, however, "overruled" Brown's motion for leave to file a delayed motion for a new trial and thus did not discuss the merits of Brown's motion for a new trial.[13] *Id*. at 500–02. Brown then attempted to raise the issue in his appeal to the court of appeals. *See id*. at 520–23. The court of appeals held that the trial court did not abuse its discretion in denying Brown's motion for leave and thus did not discuss the motion for a new trial or Brown's retroactivity argument. *Id*. at 604–13. Brown

---

[13]    In a footnote responding to a separate "Judicial Notice" that Brown filed, *see* Doc. 41-1, at 466–68, the trial court explained that the amendment to the self-defense statute did not apply retroactively, *id*. at 500 n.2.

38

then appealed to the Ohio Supreme Court but did not present his retroactivity issue in his appeal the Ohio Supreme Court. *See* Doc. 41-1, at 652–68.

Given the above, Brown's fifth ground defaulted for multiple reasons.[14] First, although Brown attempted to raise this issue in a motion for a new trial, that motion was not considered by the trial court because it rejected Brown's threshold motion to file a delayed motion for a new trial. And as noted as to ground four, the trial court and the court of appeals enforced against Brown an Ohio procedural rule that was an adequate and independent state ground on which the State could foreclose review of Brown's constitutional claim. Further, as noted as to Brown's previous grounds, he can't show cause for his default or that a "'fundamental miscarriage of justice'" would result if his ground were not reviewed.

Second, even putting the first default aside, Brown did not raise this issue before the Ohio Supreme Court. By failing to present this issue to the Ohio Supreme Court, Brown failed the fair presentment requirement. *See O'Sullivan*, 526 U.S. at 845–48; *Caver*, 349 F.3d at 345. And Brown offers no basis to conclude that there is a mechanism for him to raise his retroactivity issue now in Ohio's courts, years after those courts ruled on his direct appeal

---

[14]     The Warden argues that Brown's fifth ground is untimely under 28 U.S.C. § 2244(d)(1). Doc. 41, at 13–20. In the interest of judicial economy, this Court need not reach that issue. *Cf. Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429 n.2 (6th Cir. 2006) (quoting *Trussell v. Bowersox*, 447 F. 3d 588, 590 (8th Cir. 2006)); *Ahart v. Bradshaw*, 122 F. App'x 188, 192 (6th Cir. 2005).

and rejected his motion to file a delayed appeal, and after this Court stayed his habeas petition so that he could fully exhaust in Ohio's courts the issues he wished to present in this Court. Indeed, assuming that Brown could not have raised his retroactivity issue on direct review,[15] he is well past the time during which he could file a petition for postconviction relief. *See* Ohio Rev. Code § 2953.21(A)(2)(a).

Finally and in any event, Brown's retroactivity issue is not cognizable. The regime under which Brown was convicted, in which he had the burden to prove self-defense, was constitutional and Brown does not claim otherwise. *See Martin v. Ohio*, 480 U.S. 228, 233–34 (1987); *White v. Arn*, 788 F.2d 338, 345

---

[15]     The Warden faults Brown for not raising his retroactivity issue on direct appeal and argues that Ohio's res judicata rule would apply to bar consideration of Brown's retroactivity issue now. *See* Doc. 41, at 35–36. The Warden might be correct.

The trial court entered Brown's judgment on July 2, 2018. Doc. 41-1, at 70–74. After three extensions of time, *see id*. at 959, Brown filed his supporting brief on January 7, 2019, *id*. at 76. The State filed its brief on March 21, 2019, *id*. at 136, and House Bill 228 took effect one week later, on March 28, 2019. *See Brooks*, 208 N.E.3d at 755. Given the timing, Brown could have raised his retroactivity issue in a reply brief. *See* Ohio App. R. 16(C) (permitting an appellant to file a reply brief). And given Ohio's res judicata rule, if Brown could have raised the issue on direct review, he cannot raise it now before Ohio's courts. *See Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) ("Ohio has a rule that claims must be raised on direct appeal if possible; otherwise, res judicata bars their litigation in subsequent state proceedings."); *see State v. Szefcyk*, 671 N.E.2d 233, 235 (Ohio 1996) (reaffirming the rule from *State v. Perry*, 226 N.E.2d 104 (1967)). Assuming, therefore, that Brown could have raised this issue on direct review, he has procedurally defaulted it. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

(6th Cir. 1986). And Brown cites nothing that would require Ohio to apply the amended version of Section 2901.05 to him after he was convicted.[16]

So the question Brown presents is a matter of state law, which is a subject outside the scope of this Court's habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam). Ohio's Supreme Court has explained that in Ohio, a "statute is presumed to be prospective in its operation unless expressly made retrospective." *Brooks*, 208 N.E.3d 751 at 754 (quoting Ohio Rev. Code § 1.48). And Ohio's courts have held that the amendment to Section 2901.05 does not apply retroactively. *State v. Fisher*, 2020-Ohio-670, 2020 WL 948524, at 4 n.2 (Ohio Ct. App. 2020); *State v. Ward*, 2020-Ohio-465, 2020 WL 703560, at *3 (Ohio Ct. App. 2020); *State v. Moore*, 2020-Ohio-342, 2020 WL 549351, at *1 (Ohio Ct. App. 2020); *State v. Whitman*, 2019-Ohio-4140, 2019 WL 4942414, at *2 (Ohio Ct. App. Oct. 7, 2019). This Court is not the appropriate forum to question these decisions.

Brown's fifth ground for relief is defaulted and not cognizable.

---

[16]    Brown cites a number of United States Supreme Court decisions, which deal with whether that Court's decisions announcing new rules of criminal procedure should be applied retroactively. *See* Doc. 37, at 28 (citing *Montgomery v. Louisiana*, 577 U.S. 190 (2016), *Teague v. Lane*, 489 U.S. 288 (1989), and *Griffith v. Kentucky*, 479 U.S. 314 (1987)); *see also* Doc. 44, at 29. None of these cases has anything to do with whether a state statute amending the burden of proof in a criminal case should be applied retroactively to convicted and sentenced defendants.

## Conclusion

For the reasons set forth above, I recommend that Brown's Petition be dismissed.

Dated: September 20, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).